# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Daniel Ryan McGough, <br> *Plaintiff,* <br><br> v. <br><br> WASHTENAW COUNTY, <br> *a Michigan municipal corporation, et al.* <br> *Defendants.* | Case No.: 2:25-cv-11226-MAG-DRG <br><br> Honorable Mark A. Goldsmith <br> Magistrate Judge David R. Grand |

# COMPLAINT FOR EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES, AND OTHER EQUITABLE RELIEF

UNDER 42 U.S.C. §§ 1983, 1985, 2201, 2202, and the ALL WRITS ACT
FOR SYSTEMATIC VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
MALICIOUS PROSECUTION, UNLAWFUL DEPRIVATION OF LIBERTY,
AND INTERFERENCE WITH FAMILIAL RELATIONS

JURY TRIAL DEMANDED

## I. Introduction

1. **Overview of the Case**

This case revolves around a systematic pattern of abuse of power and rights violations perpetrated by law enforcement and judicial officials in Washtenaw County, Michigan. The plaintiff, Daniel Ryan McGough, brings this action under 42 U.S.C. § 1983 to seek redress for ongoing constitutional violations stemming from two distinct but deeply intertwined legal matters: a felony criminal case (25-75-FH) and a family court custody dispute (19-2734-DC). This cross-contamination of proceedings resulted in a cascading series of constitutional violations, including unlawful arrest, malicious prosecution, and deprivation of parental rights without due process. Rather than operating as separate and impartial forums, the criminal and family court systems functioned in concert to deprive Plaintiff of his liberty, reputation, and parental relationship, all while cloaked in the appearance of legitimate judicial processes.

Plaintiff brings this action to expose and remedy these intertwined abuses, which have left him effectively barred from defending himself in either case. Plaintiff seeks equitable relief under 42 U.S.C.

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

§ 1983 and this Court's inherent equitable powers, including declaratory relief to recognize and clarify his constitutional rights, and injunctive relief to restore and protect his rights moving forward. Plaintiff seeks equitable remedies to prevent further violations, including restoration of his parental rights, protection of the child's welfare, and the cessation of retaliatory or unlawful actions by the defendants. The use of criminal allegations as a strategic tool to control family court outcomes—without regard for due process **or truth**—demonstrates a broader institutional failure that implicates multiple defendants, involving judicial officers, prosecutors, law enforcement, and private actors who misused state powers for personal gain.

2. **The Felony Case** – *Washtenaw County Circuit Court – Case No. 25-75-FH*

On October 11, 2024, Plaintiff was unlawfully arrested by officers of the Ypsilanti Police Department without a warrant, probable cause, or reasonable suspicion. This arrest was part of a broader pattern of police misconduct involving fabricated charges post hoc—including an alleged assault on a police officer—and the suppression of exculpatory evidence, following which lead to a retaliatory move by the presiding judge, acting *sua sponte,* compounding two additional felony assault charges to the case on February 11, 2025. These actions, driven by improper motivations, have resulted in ongoing legal jeopardy for Plaintiff, including an *active* arrest warrant as of April 10, 2025.

3. **The Family Case** – *Washtenaw County Trial Court – Case No. 19-2734-DC*

Concurrently, Plaintiff's family court case has been deeply affected by the same unconstitutional actions. Patrick Joseph Conlin's decision to suspend Plaintiff's parental rights was directly influenced by the flawed felony charges he oversaw as Chief judge of Washtenaw County. Plaintiff was not afforded the opportunity to challenge or address the fabricated evidence in the family court proceedings before Conlin conspired with other defendants to deprive Plaintiff of access to his child. The McCloskey family—private individuals with a vested interest in the custody dispute—knowingly submitted false emergency reports to law enforcement and the judiciary in a deliberate effort to trigger state action and undermine Plaintiff's parental rights without due process. These actions, coupled with the misconduct by both law enforcement and the judiciary, have resulted in the unlawful interference with Plaintiff's relationship with his child, causing ongoing harm to his familial and parental rights.

### Acknowledgment of Litigant's Efforts and Good Faith

4. The Plaintiff, Daniel Ryan McGough, respectfully submits this complaint with full acknowledgment of his position as a pro se litigant. While Plaintiff is not a trained attorney, he is dually sworn to the truth of all statements presented herein and affirms that the facts contained within this document are accurate to the best of his knowledge and belief. Plaintiff further acknowledges the inherent limitations of his

abilities in the formal legal processes and procedures, but has made every effort to approach this case with diligence, honesty, and in good faith.

5. The Plaintiff is fully aware of the complexities and procedural nuances of the law, and while he may not always be able to express his arguments with the precision of an experienced attorney, he believes that the gravity of the constitutional violations at issue and the urgent need for redress justify this action. His intent is solely to seek a fair remedy for the ongoing, unlawful actions that have infringed upon his constitutional rights, including his fundamental right to be a parent to his child, and his right to due process of law.

6. It is in this spirit that Plaintiff submits this complaint, not as an attempt to evade any responsibility or shortcomings on his part, but rather as a good-faith effort to expose the systemic abuses and violations that have occurred. Plaintiff respectfully requests this Court's understanding of his position and seeks the Court's assistance in restoring his rights and rectifying the injustices described herein.

## II. Jurisdiction and Venue

7. Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the laws of the united States, including claims brought under 42 U.S.C. § 1983 for violations of Plaintiff's federally protected constitutional rights, including the First, Fourth, and Fourteenth Amendments.

8. This Court also has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy.

9. Jurisdiction for declaratory and injunctive relief is proper under 28 U.S.C. §§ 2201 and 2202, as well as for a writ of habeas corpus or other extraordinary relief under the All Writs Act, 28 U.S.C. § 1651.

10. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b), as the events or omissions giving rise to the claims occurred within this district, and all Defendants reside or are employed within this jurisdiction.

11. Plaintiff seeks emergency preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 and the All Writs Act, as he is currently subject to ongoing and irreparable harm, including continued loss of liberty, obstruction of parental rights, and interference with employment opportunities. These harms are a direct result of actions taken by the Defendants in bad faith, which violate Plaintiff's clearly established constitutional rights.

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

- Federal intervention is both necessary and appropriate in this case under the well established exceptions to the Younger abstention doctrine, as articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

12. Specifically, abstention is unwarranted where:

- Plaintiff faces immediate and irreparable harm**,** including loss of liberty, parental rights, and livelihood, which no state court remedy can adequately or timely address;

- No adequate or impartial forum exists within the state judicial system to vindicate Plaintiff's federal rights, as demonstrated by repeated procedural roadblocks and retaliatory conduct by state actors.

- State proceedings are being conducted in bad faith or for the purpose of harassment, particularly where officials use the machinery of the state court to shield themselves from accountability;

Here, each of these exceptions applies. Plaintiff has made good-faith attempts to seek redress in the Michigan state courts, including filing a writ of superintending control and a writ of mandamus — both appropriate avenues for correcting constitutional violations. Yet not only did these filings fail to produce any meaningful remedy, they triggered escalated retaliation by state officials with the intent on silencing or punishing Plaintiff for asserting his rights. The state judicial system has not only proven ineffective; it has become a vehicle for ongoing constitutional injury. In such circumstances, Younger abstention does not apply, and this Court has both the authority and the obligation to intervene to prevent further harm.

13. Plaintiff's claims against the private defendants are properly brought under 42 U.S.C. § 1985, as these individuals acted in concert with state actors to deprive Plaintiff of his constitutional rights. Specifically:

- **Conspiracy with State Actors**: Private individuals actively collaborated with government officials to initiate or sustain constitutional violations.

- **Intentional Misuse of Legal Process**: False reports and fabricated claims were knowingly used to trigger state action, aiming to cause harm.

- **Class-Based or Retaliatory Animus**: Actions were motivated by discriminatory or retaliatory intent, targeting the plaintiff for exercising protected rights (e.g., parental, procedural, or First Amendment rights).

- **Resulting Constitutional Harm**: The conspiracy directly caused deprivations of federally protected rights, including due process, liberty, and familial association.

- **Legal Precedent Supports Liability**: Supreme Court and circuit case law (e.g., *Griffin v. Breckenridge*, *Dennis v. Sparks*) clearly allows § 1985 liability where private actors join with state officials to effectuate unlawful goals.

As such, Plaintiff's claims against named private individuals are valid under § 1985 and should proceed.

## III. Parties

14. Plaintiff **Daniel Ryan McGough** is a natural person domiciled in Washtenaw County, Michigan. He brings this action as an individual whose constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments have been repeatedly violated. Plaintiff is currently subject to a pending arrest warrant and continuing harm due to meritless criminal proceedings and associated collateral consequences, including deprivation of parental rights and interference with employment and housing.

15. Defendant **Washtenaw County** is a municipal corporation organized under the laws of the State of Michigan, responsible for operating the county jail, employing prosecutorial and judicial personnel, and overseeing the local criminal justice system. The County is a proper defendant as its policies, customs, and failures are directly responsible for the deprivation of Plaintiff's constitutional rights.

16. Defendant **Gregory Dill** is the Washtenaw County Administrator, named in his official capacity. He is responsible for oversight and management of county departments, including those implicated in the unconstitutional arrest, detention, and prosecution of Plaintiff.

17. Defendant **City of Ypsilanti** is a municipal corporation organized under Michigan law. The City operates the Ypsilanti Police Department and is liable for its customs, policies, training, and supervision failures that resulted in Plaintiff's unlawful seizure and constitutional deprivations.

18. Defendant **Officer Darnell Tyson** is a law enforcement officer employed by the Ypsilanti Police Department, sued in both his individual and official capacities. Officer Tyson played a direct and personal role in effectuating Plaintiff's unconstitutional arrest, initiating a malicious prosecution, and fabricating or distorting material facts concerning the alleged incident.

19. Defendant **Eli Noam Savit** is the elected Prosecuting Attorney for Washtenaw County, sued in his official capacity. He is responsible for directing and supervising criminal prosecutions within the county

and has authorized or failed to prevent ongoing bad-faith prosecution of Plaintiff despite exculpatory evidence.

20. Defendant **Ashley A. Londy** is an Assistant Prosecuting Attorney for Washtenaw County, sued in both her individual and official capacities. Londy is directly responsible for continuing Plaintiff's prosecution in bad faith and for suppressing material, exculpatory evidence favorable to the defense. Prior to the issuance of a bench warrant on October 24, 2024, Plaintiff had timely requested discovery, which was improperly delayed. Londy objected in open court to the review of her own evidence submissions, and knowingly denied Plaintiff access to material exculpatory evidence in violation of *Brady v. Maryland*, contributing to a pattern of abuse of process and malicious prosecution. After Defendant Simpson issued the warrant and deliberately failed to timely review Plaintiff's filings, Defendant Scott McCloskey— upon learning of the warrant—initiated a dispatch that resulted in an attempted arrest of Plaintiff, from which he was medically discharged. Londy further manipulated the proceedings by permitting tainted testimony, attempting to dismiss remaining officers once exculpatory evidence came to light, and suppressing critical body camera footage while Officer Tyson was under oath, despite the related assault charge being revealed as non-credible. Londy's actions reflect a sustained and retaliatory misuse of prosecutorial authority that materially contributed to the deprivation of Plaintiff's constitutional rights.

21. Defendant Judge **John Cedric Simpson** is a judicial officer in Washtenaw County, sued in both his individual and official capacities. Judge Simpson presided over key hearings in Plaintiff's criminal proceedings and actively obstructed Plaintiff's ability to present a defense. He refused to hear multiple motions from Plaintiff requesting discovery, the introduction of testimony, and the review of exculpatory evidence, including material body camera footage relevant to Officer Tyson's conduct. While Officer Tyson was testifying under oath, Judge Simpson objected to the introduction of this exculpatory evidence and prevented its review in real time. Immediately after this favorable evidence surfaced— evidence which cast serious doubt on the prosecution's case—Judge Simpson sua sponte added two additional charges under MCL § 750.81d without notice or proper motion, in what appears to be a retaliatory act. Judge Simpson's conduct perpetuated malicious prosecution and materially contributed to the denial of due process and Plaintiff's liberty and familial interests.

22. Defendant **Lisa Fusik** is the Administrator of the 14A-1 District Court in Washtenaw County and is sued in her official capacity. Fusnik is responsible for administrative oversight and docket management at the district court level. Her omissions in court administration contributed to the unlawful delays, barriers to access, and continued violations of Plaintiff's rights to liberty and due process.

23. Defendant **Steven Matthews** is the Administrator of the 22nd Circuit Court in Washtenaw County and is sued in his official capacity. Matthews is responsible for administrative oversight and docket

All Rights Reserved Without Prejudice
Submitted By: **Daniel Ryan McGough C/O PO Box 970081 Ypsilanti MI [48197]**
**313-348-0459** | dryan616@icloud.com

management at the circuit court level. His omissions in court administration contributed to the unlawful delays, barriers to access, and continued violations of Plaintiff's rights to liberty and due process.

24. Defendant **Takisha Mastin** is the Supervisory Clerk of the 22nd Circuit Court in Washtenaw County and is sued in both her individual and official capacities. In her administrative role, Mastin exercised direct authority over the docketing, filing, and procedural processing of court records in both Plaintiff's family law and criminal proceedings. Despite her obligation to maintain neutral and lawful administration of court access, Mastin knowingly obstructed Plaintiff's ability to file critical pleadings, delayed or refused the processing of time-sensitive motions, and thereby contributed materially to the denial of Plaintiff's due process rights. Her actions, under color of state law, enabled and perpetuated judicial misconduct and procedural abuse, compounding the harm to Plaintiff's liberty, parental rights, and access to redress.

25. Defendant **Judge Arianne Elizabeth Slay**, a judicial officer of the Washtenaw County Trial Court, is sued in both her individual and official capacities. Judge Slay presides over both Plaintiff's criminal and family court proceedings, using her authority in both arenas to exacerbate and reinforce constitutional violations in the other. She simultaneously authorized the unlawful suspension of Plaintiff's parental rights and the issuance of a bench warrant for his arrest after Plaintiffs federally protected activity, effectively participating in a coordinated effort to deprive him of both liberty and familial association under color of law. Her actions expedited prosecutorial objectives while obstructing Plaintiff's access to parental rights, highlighting a systemic abuse of judicial power that produced retaliatory outcomes and denied Plaintiff a fair and impartial forum in both cases.

26. Defendant **Judge Patrick Joseph Conlin Jr.** is the Chief Judge of the Washtenaw County Trial Court, sued in both his individual and official capacities. In his leadership role, Judge Conlin wielded considerable influence over judicial proceedings and court administration, which he used to reinforce unconstitutional practices. He issued an ex parte order against Plaintiff based on flawed premises and without evidentiary foundation or review, circumventing due process and effectively weaponizing the judiciary to impose punitive and retaliatory restrictions. His conduct not only caused immediate and lasting injury to Plaintiff's constitutional rights and liberties, but also set a damaging precedent that chilled access to justice and emboldened

27. Defendant **Alyssa Rachelle McCloskey (a/k/a Lewis)**, upon information and belief, resides in Washtenaw County, Michigan. As a private individual acting in concert with state officials, she played a central and initiating role in a sustained campaign to deprive Plaintiff of his fundamental constitutional rights. McCloskey knowingly and willfully submitted multiple false emergency reports to both judicial and executive branches, advancing fabricated allegations—particularly of abuse and neglect—through law enforcement, Child Protective Services, and family court proceedings. These claims were unfounded

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

and demonstrably false, yet were strategically deployed to provoke state intervention. Her conduct was not only malicious and retaliatory, but indicative of a broader conspiracy to weaponize public authority for personal aims. In doing so, McCloskey directly violated Plaintiff's rights to due process, familial association, and personal reputation, all under the color of law. Her efforts have been ongoing and persistent, as evidenced by her continued obstruction of reunification between Plaintiff and his child as recently as June 2025, through the misuse of judicial processes and retaliatory court filings designed to prolong separation.

28. Defendant **Scott Anthony McCloskey**, upon information and belief, also resides in Washtenaw County, Michigan. Acting in collaboration with Defendant Alyssa McCloskey and state actors, he knowingly participated in the orchestration and perpetuation of a malicious campaign aimed at severing Plaintiff's custodial and parental rights through deceit and judicial exploitation. By affirming, amplifying, and facilitating false narratives submitted to legal authorities, Scott McCloskey weaponized the judicial and law enforcement systems for personal and punitive purposes. His actions were not only deeply injurious to Plaintiff's rights and reputation but also constituted knowing participation in a scheme to pervert the justice system in violation of clearly established constitutional norms.

29. Defendant **Jeffrey G. Bennett**, upon information and belief, resides and practices law in the State of Michigan. He is sued in his individual capacity. Bennett acted as private counsel for Defendant Alyssa McCloskey during the underlying custody proceedings in Washtenaw County Family Court. In this role, Bennett actively participated in a broader conspiracy with known state actors—including Judge Slay—to deprive Plaintiff of his constitutional rights, including familial association, procedural due process, and equal protection. He willfully relied on demonstrably false, misleading, or uncorroborated claims in order to secure unlawful suspension of Plaintiff's natural rights and bolster retaliatory contempt proceedings. His conduct reflects not mere advocacy, but coordinated abuse of legal process in concert with state actors and other private individuals, in violation of 42 U.S.C. § 1985. Bennett's pattern of malicious and abusive litigation tactics has continued unabated, including as recently as June 13, 2025, when he submitted knowingly false objections to obstruct the reunification of Plaintiff with his son. These objections, grounded in fabricated narratives and mock proceedings, were intended to inflict irreparable harm and demonstrate a blatant disregard for the best interests of the child. Bennett's conduct was *and still is* being carried out in bad faith and with the deliberate aim of causing continuing damage to Plaintiff's familial rights and emotional well-being, while chilling his protected activity under threat of further baseless legal actions.

30. Defendant **Jessica L. Kirkland**, upon information and belief, resides and practices law in the State of Michigan. She is sued in her individual capacity. Kirkland entered her appearance in the family court

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

proceedings on behalf of Defendant Alyssa McCloskey and participated in the prosecution of improper contempt actions and motions designed to restrict Plaintiff's parenting time based on unfounded or procedurally defective claims—as leverage in the family court setting, thereby reinforcing the deprivation of Plaintiff's rights without a fair hearing or adjudication. Like Defendant Bennett, Kirkland functioned as an active participant in a joint scheme involving state officials to deprive Plaintiff of liberty, familial association, and due process, in violation of federal civil rights statutes including 42 U.S.C. § 1985. Her sustained pattern of conduct over time contributed to a chilling effect on Plaintiff's constitutional rights and compounded the emotional and developmental harm to the child. These actions appeared calculated and undertaken without any objectively reasonable justification, further reflecting a deliberate and malicious intent to suppress the parent-child relationship absent any lawful basis.

31. Defendants **John and Jane Does 1–10** are unknown individuals who, at all relevant times, acted under color of state law in furtherance of the unlawful arrest, detention, prosecution, and obstruction of Plaintiff's constitutional rights. These Respondents include yet-unidentified officers, court staff, jail personnel, and administrative actors whose actions materially contributed to the harms suffered by Plaintiff. Plaintiff reserves the right to amend this Complaint to include their true names and capacities once they are ascertained through discovery.

## IV. Factual Background

### A. Unlawful Arrest and Fabricated Charges

31. On October 11, 2024, Plaintiff was unlawfully detained, searched, and arrested by Officers Tyson, Gibbs, and Smith of the Ypsilanti Police Department without any warrant, reasonable suspicion, probable cause, or exigent circumstances.

32. Prior to this seizure, Plaintiff was not suspected of any criminal activity, and the officers failed to articulate any lawful basis for initiating a stop, search, and arrest.

33. The first mention of any charge occurred long **after** Plaintiff was already detained and placed in the back of a patrol vehicle. Body-worn camera footage captures Sergeant Gibbs stating to other officers:

*"So what we're going to do, we charge him, one, interfering.*

*Several times talked to him, he's out, whatever, refused to move, interfering."*

34. The vague and imprecise language reveals that no specific or articulable suspicion existed at the time of arrest, in direct violation of *Ybarra v. Illinois, 444 U.S. 85 (1979),* which prohibits arbitrary searches and seizures not based on individualized suspicion.

35. Only after this exchange did Officer Tyson interject with a new and uncertain allegation:

> *"Man, he kicked me – he tried to kick me in the nuts, bruh."*

36. This statement is inherently contradictory — shifting in a split moment from the definite *"he kicked me"* to the speculative *"he **tried** to kick me."*

37. The inconsistency reveals that Officer Tyson's vague and inconsistent allegation — introduced *only after* Plaintiff had already been detained — lacks the clarity and credibility required to support a criminal charge, especially one as serious as felony assault on a police officer.

38. Sergeant Gibbs then responded:

> *"Oh, I didn't know he kicked.*
> *So that's R&O right there.*
> *So we can take him straight to jail at this point. Yep."*

39. This sequence is significant. The charge of Resisting and Obstructing (R&O) was not based on contemporaneous conduct, but was instead concocted **after** Plaintiff was restrained — based solely on an offhand, uncertain, and casually delivered remark.

40. Plaintiff was not suspected of any crime at the time of his detention, and the charge of R&O was only levied after he was already detained and without any lawful basis for arrest.

41. This conduct violates both federal and Michigan law, as the officers escalated force without any suspicion of a crime or lawful reason to be involved. Under federal law, the use of force requires that officers be lawfully performing their duties. See *Graham v. Connor*, 490 U.S. 386 (1989). Similarly, Michigan law requires that officers be lawfully engaged in their duties to support charges of resisting or obstructing. See *People v. Moreno*, 491 Mich. 38 (2012).

42. The common law right to reasonably resist an unlawful arrest is well-established, as affirmed in *Bad Elk v. United States*, 177 U.S. 529 (1900), and recognized in *U.S. v. Span*, 970 F.2d 573, 577 (9th Cir. 1992).

43. Body camera footage further undermines the prosecution's narrative. Minutes later, while speaking to another Officer and E.M.S., Officer Tyson tells an unprompted joke:

*"I got kicked, too. I'm hurting. **No, I'm just joking. Ha-ha!***
*You've got to deal with me for the rest of the night."*

44. When E.M.S. followed up with a question about the night's events, Tyson remarked:

*"It's been an entertaining night, nonetheless."*

45. These comments reflect a dismissive and flippant attitude inconsistent with a legitimate assault allegation and reveal the charge to be retaliatory or pretextual.

46. Quicker than they just arrested Plaintiff and immediately after realizing his body camera was still recording, Officer Tyson abruptly turned it off.

47. The timing of this deactivation, immediately following self-contradictory remarks, supports an inference of consciousness of guilt.

48. These statements and omissions are materially exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963), but they were neither disclosed in a timely nor transparent manner.

49. Furthermore, the prosecution, as well as the Washtenaw County District and Circuit Courts, have refused to acknowledge their exculpatory nature.

50. No physical evidence supported the assault claim. There were no reported injuries, photos, medical records. Despite the presence of multiple officers and EMS personnel. The only recorded evidence — Officer Tyson's own words — contradicts the assault allegation.

51. At the February 11, 2025 evidentiary hearing, Officer Tyson could not identify any moment in the body camera footage when the alleged kick occurred, even after continuous review. This further confirms that the charge was fabricated.

52. The official incident reports submitted by the arresting officers stated, verbatim, that:

*"Daniel assaulted Ofc. Tyson by kicking him in the groin with his **right foot***
*after multiple warnings from Ofc. Tyson and officers on the scene."*

53. This statement was repeated in identical language, structure, and punctuation across both reports — strongly suggesting they were written in coordination.

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

54. This type of synchronized reporting, particularly when used to justify an arrest, is recognized by federal courts as unconstitutional fabrication. See *Ricciuti v. N.Y.C. Transit Auth.*, *124 F.3d 123 (2d Cir. 1997)*.

55. The definitive nature of the language used in these reports — "assaulted... by kicking" — directly contradicts the uncertainty and casual delivery of the initial accusation on body-worn camera, where Officer Tyson said, *"he tried to kick me in the nuts, bruh,"* only to later joke, *"I'm just joking."* The contrast between these conflicting accounts — one spontaneous and uncertain, the other formal and identical across multiple officers — supports Plaintiff's assertion that the reports were retroactively falsified to justify an otherwise unlawful arrest.

<u>B. February 11, 2025 – Evidentiary Hearing</u>

**Compounding Charges, Suppression of Evidence & Retaliation**

56. On October 11, 2024, the Washtenaw County Prosecutor's Office issued a felony complaint charging Plaintiff with one count under MCL 750.81(d) – Assaulting, Resisting, or Obstructing a Police Officer.

57. Assigned Case No.: 24F21389 under Defendant Simpson in Washtenaw County's 14A-1 District Court.

58. At the February 11, 2025 evidentiary hearing, Officer Smith and SGT Gibbs, while under oath, confirmed that they did not personally witness Plaintiff kick or assault Defendant Tyson in any way.

59. These sworn testimonies also directly contradict the detailed narrative contained in their initial reports, which identically claimed Plaintiff kicked Defendant Tyson with his right foot.

60. Their courtroom admissions exposed the original foundational charge as uncorroborated and meritless.

61. Defendant A.P.A. Londy, upon review of evidence that the allegations were made in jest, openly objected to the introduction of the body cam which she herself submitted for use to prosecute Plaintiff.

62. When Plaintiff attempted to replay the recording during cross-examination while Defendant Tyson was under oath, Defendant Simpson abruptly ordered his clerk to terminate the video presentation,

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

effectively obstructing Plaintiff's ability to confront the witness with key exculpatory evidence in real time.

63. Courts have consistently held that the suppression or obstruction of exculpatory evidence, whether by omission or direct interference, undermines the fairness of judicial proceedings and violates the defendant's rights. See *United States v. Agurs*, 427 U.S. 97 (1976); *Kyles v. Whitley*, 514 U.S. 419 (1995).

64. After this suppression, and without any prosecutorial motion, new evidence, or supporting affidavit, Defendant Simpson added two MCL 750.81(d) felony charges *sua sponte* at the closing of the hearing.

65. Defendant Simpson's expansion of charges, absent executive branch action, violates the doctrine of separation of powers and Plaintiff's procedural and substantive due process rights under the Fifth and Fourteenth Amendments. See *Wayte v. United States*, 470 U.S. 598 (1985).

66. Judges do not possess charging authority, and doing so exceeds their jurisdiction.

67. Defendant Simpson bound the case over to the 22nd Circuit Court under Defendant Slay with no factual findings or legal basis to proceed.

68. After the February 11, 2025 evidentiary hearing, Plaintiff now faces **three** felony MCL 750.81(d) charges without any first-hand eyewitness corroboration, physical evidence, or lawful charging process.

69. The continued pendency of these meritless and compounding charges underscores the retaliatory and unconstitutional nature of the prosecution. More than six months into this malicious and unreasonable prosecution, the case has been marred by repeated adjournments, coordinated suppression of favorable evidence, and judicial actions taken without jurisdiction. This pattern reflects a sustained abuse of discretion, prosecutorial misconduct, and a breakdown of core constitutional protections at every level.

### C. Lawful Presentments, Exhaustion of Remedies, and Institutional Failure to Respond

70. Plaintiff undertook formal and lawful action to challenge the basis of the charges levied against him from the very onset of the case, filing suppression motions based on clear constitutional violations by

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

the officers involved. In doing so, Plaintiff anticipated the direct harm these violations would cause to his personal, familial, and professional life, which would only escalate as the case progressed.

71. In response, Plaintiff was met with continuous judicial misconduct by Defendant Simpson, who deliberately ignored discovery and suppression motions, disregarding Plaintiff's filings and rights.

72. Defendant Simpson further exacerbated the situation by issuing bench warrants for Plaintiff's failure to appear, despite Plaintiff's timely submission of filings and requests for discovery.

73. In response to the charges levied against him, Plaintiff formally challenged their basis by issuing a Notice of Liability and Demand for Abatement to the Ypsilanti Police Department and Washtenaw County Prosecutors Office.

74. This presentment, executed under penalty of perjury, invoked both the U.S. and Michigan Constitutions and was directed to the Washtenaw County Prosecutor's Office and the Ypsilanti Police Department.

75. In it, Plaintiff declared his political status, identified repeated civil rights violations, and imposed lawful consequences for any further trespass upon his liberties.

76. This notice included clear constitutional claims and penalties for continued unlawful conduct, and requested abatement of further action absent a verified and lawful basis.

77. In addition to these administrative notices, Plaintiff pursued formal judicial remedies in the Michigan appellate courts.

78. On December 9, 2024, Plaintiff filed a Petition for a Writ of Mandamus with the Michigan Court of Appeals, demanding that the lower court be compelled to perform its constitutional duties, including honoring Plaintiff's right to due process and judicial review.

79. On December 11, 2024, Plaintiff filed a Petition for a Writ of Superintending Control, seeking supervisory intervention to correct the pattern of judicial nonfeasance and obstruction at the district court level.

80. These petitions were part of a broader effort to exhaust all lawful avenues for redress.

81. Following the evidentiary hearing, Plaintiff issued a series of sworn affidavits and rebuttal letters intended to lawfully refute the factual and legal foundation of the criminal allegations. These included:

- A *Formal Rebuttal to Charges* addressed specifically to Defendant Tyson, Officer Smith, and Sgt Gibbs, clearly identifying legal contradictions in their reports, and citing relevant case law including *People v. Moreno* and *People v. Feeley*, to show the charges lacked merit.

- A *Sworn Affidavit of Truth*, which recited in detail the factual timeline of events, acts of excessive force, fabricated evidence, and procedural misconduct by judicial officers and law enforcement. It demanded relief, including dismissal of charges, internal investigation, suppression of tainted evidence, and compensation for harm suffered.

82. Though these lawful notices, filings, and formal rebuttals, were delivered with no response or rebuttal was ever issued by the prosecution, the police department, or the judiciary. Under binding legal maxims—an unrebutted affidavit stands as truth in commerce and law—this silence amounts to tacit acquiescence and a presumed admission to the facts as stated.

83. In furtherance of this good-faith effort to invoke due process, Plaintiff sent multiple documents by certified mail to law enforcement and prosecutorial offices. The following tracking numbers confirm receipt:

  - Certified Mail No. 9589 0710 5270 2353 7338 92

    Sent to Ypsilanti Police Department – March 7, 2025

  - Certified Mail No. 9589 0710 5270 2384 7575 08

    Sent to Ypsilanti Police Department – March 12, 2025

  - Certified Mail No. 9589 0710 5270 0871 8043 46

    Sent to Ypsilanti Police Department – March 26, 2025

  - Certified Mail No. 9589 0710 5270 0871 8043 39
    Sent to Michigan A.G. Office – March 29, 2025

84. Upon bind over to Circuit Court, On April 1, 2025, Plaintiff filed an Affidavit in Demand for a True Bill**,** requesting presentment within a 72-hour timeframe.

85. To date, there has been no acknowledgment or response regarding the availability of the request, further confirming the County's failure to meet its burden of proof and provide procedural fairness.

86. Furthermore, Plaintiff submitted an Affidavit of Truth on April 2, 2025 and again on April 10, 2025, which, though being properly filed and served, these filings have been *intentionally* excluded from the court's record.

87. This conduct constitutes more than mere negligence; it demonstrates the intentional suppression of exculpatory materials as part of a coordinated pattern of procedural manipulation and judicial

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

nonresponsiveness, amounting to fraud upon the court and a denial of Plaintiff's rights to fairness, due process, and equitable relief.

88. At the April 3, 2025 pre-trial conference, Defendant Slay initially approved Plaintiff's request to appear via Zoom. However, without addressing or acknowledging Plaintiff's legal and factual assertions, she abruptly terminated the video call and, without cause or discussion, unilaterally expedited an adjourned hearing, setting it for April 10, 2025, while demanding Plaintiff's physical appearance in person.

89. Even with proper rebuttals and unaddressed affidavits on the record, and while denying Plaintiff's request for zoom access, Defendant Slay proceeded to issue a bench warrant for "Failure To Appear".

90. The failure to respond, rebut, or even acknowledge these actions amounts to judicial bad faith, constructive fraud, and a wholesale deprivation of procedural fairness compounded by retaliatory bench warrants.

## D. Collateral Impact On Parental Rights and Judicial Abuse in Family Court

91. Although Defendant Conlin did not preside over Plaintiff's criminal case directly, he serves as Chief Judge in Washtenaw County, which includes both the Criminal and Family Divisions.

92. Defendant Conlins position and influence allowed him to improperly use the criminal proceedings against Plaintiff in the context of the family court matters.

93. On November 20, 2024, Defendant Conlin unlawfully suspended Plaintiff's parenting time, citing the pending criminal charges, without affording Plaintiff prior notice or an opportunity to be heard.

94. The McCloskeys (Alyssa and Scott), in coordination with Defendant Conlin, have repeatedly weaponized emergency services and manipulated law enforcement and the court system to advance personal vendettas against Plaintiff, resulting in sustained violations of his constitutional rights.

95. On October 25, 2024, the McCloskeys maliciously reported Plaintiff's location to law enforcement just before his scheduled custody exchange, knowing the police would arrest him due to a bench warrant. Their intent was not public safety, but to disrupt Plaintiff's custodial time, cause his arrest, and interfere with his parent-child relationship.

96. The McCloskeys orchestrated multiple 911 calls that day, resulting in Plaintiff's wrongful arrest and subsequent medical discharge from the Washtenaw County Jail due to hypertension and emotional

distress caused by their actions. These calls were a deliberate attempt to interfere with Plaintiff's parental rights.

97. Despite Plaintiff's medical discharge and efforts to complete the parenting exchange at the child's school, the McCloskeys again contacted law enforcement later that day to interfere with Plaintiff's scheduled custodial time.

98. These manipulative actions reflect an ongoing pattern of retaliatory conduct aimed at depriving Plaintiff of his parental rights. The McCloskeys used their false claims to harass and stalk Plaintiff, all the while attempting to alienate him from his child.

99. On November 19, 2024, Defendant Alyssa McCloskey submitted an affidavit requesting an emergency ex parte order to suspend Plaintiff's parenting time, referencing the arrest she and her husband had orchestrated. This ex parte request violated Plaintiff's rights to due process, relied on fabricated claims, (including the falsified Y.P.D. felony charges) and further perpetuated a pattern of fraudulent actions.

100.  Defendant Conlin granted this ex parte order on November 20, 2024, without an evidentiary hearing or an opportunity for Plaintiff to respond, violating Plaintiff's constitutional rights to procedural due process and his fundamental parental rights.

101.  Following the unlawful suspension of Plaintiff's parenting time, Defendant Alyssa McCloskey, through her counsel Veronica White, escalated her retaliatory campaign by filing an Affidvait/Order to SHOW CAUSE why Plaintiff shouldn't be held in contempt on December 17, 2024. In that filing, Defendant McCloskey requested both civil and criminal contempt charges against Plaintiff. This petition was filed less than a month after the November 19, 2024 ex parte suspension of Plaintiff's rights, compounding the procedural abuse already inflicted upon him.

102. Defendant Slay's decision to pursue contempt proceedings—rather than addressing the underlying judicial misconduct or false arrest issues—reflected a continued pattern of weaponizing the courts to achieve personal and retaliatory goals. The contempt proceedings were prioritized over Plaintiff's properly filed Motion to Dissolve Ex Parte, Motion for Recusal, and Writ of Quo Warranto while Defendants effectively sidestepped legitimate challenges to judicial bias and further stacking the proceedings against Plaintiff.

103. These actions occurred despite Plaintiff's pending appeal in the Michigan Court of Appeals (Case No. 373843), filed on December 23, 2024, challenging the underlying unlawful deprivation of his rights.

104.  The relentless efforts by Defendants to incarcerate Plaintiff through civil and criminal contempt proceedings, while ignoring credible allegations of misconduct, exemplify a grotesque abuse of

All Rights Reserved Without Prejudice

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

judicial authority and personal vendettas disguised as legal process. The conduct of the Defendants illustrates a deliberate, coordinated campaign to silence Plaintiff's lawful attempts to vindicate his rights and to punish him for seeking redress through legitimate legal channels.

105.  Defendant Slay, now presiding over both Plaintiff's baseless criminal case and the parallel custody matter, has abused her dual authority to suppress accountability for the misconduct perpetrated within Washtenaw County courts. By controlling both proceedings simultaneously, Defendant Slay has used the pending criminal charges—despite their lack of evidentiary support—as justification to prolong and effectively ban Plaintiff's access to his child, without any proof of actual harm, danger, or wrongdoing by Plaintiff.

106.  While delaying any genuine reunification efforts between Plaintiff and his child in the family court proceedings, Defendant Slay has simultaneously expedited Plaintiff's criminal matter without proper legal foundation. These actions are calculated to shield the court system from scrutiny and avoid addressing the constitutional violations Plaintiff has raised. Defendant Slay's conduct constitutes a gross abuse of judicial discretion, revealing a systemic pattern of bad faith, retaliatory litigation tactics, and obstruction of justice at the judicial level.

107.  During the December 12, 2024 hearing, Defendant Conlin ignored the well-documented abuse of process by the McCloskeys, relying on fabricated police reports and unadjudicated criminal charges to continue the suspension of Plaintiff's parental rights. This decision undermined Plaintiff's right to a fair hearing and denied him due process.

108.  On January 24, 2025, Defendant Slay, after reassignment of the case, upheld Defendant Conlin's prior orders without a de novo review, further denying Plaintiff his constitutional rights. The court also imposed severe restrictions on Plaintiff's access to his child, including appointing Scott McCloskey—the very individual who had orchestrated the false reports against Plaintiff—as the supervisor for Plaintiff's limited, one-hour video calls with his child.

109.  This decision by Defendant Slay was retaliatory in nature, as it allowed the McCloskeys, who had abused emergency services and the legal process to harm Plaintiff, to continue exerting control over Plaintiff's interactions with his child. The appointment of Scott McCloskey as the supervisor of these video calls undermines any meaningful connection between Plaintiff and his child, and reflects a disregard for Plaintiff's natural rights.

110.  The court-imposed conditions for these video calls, including restrictions on the topics Plaintiff could discuss with his child, further demonstrated the punitive and retaliatory nature of the

proceedings. These interruptions, which included abrupt terminations of calls and dismissive treatment, are part of the broader pattern of abuse Plaintiff has experienced by the McCloskeys.

111.  The actions of Defendant Conlin, Defendant Slay, and the McCloskeys reflect a coordinated effort to strip Plaintiff of his parental rights and to retaliate against him for challenging their actions. These sustained violations have caused irreversible harm to Plaintiff's relationship with his child, and reflect systemic abuse of judicial and law enforcement power.

112.  The actions of Defendants—who manipulated the legal process and abused their power—represent not only retaliation but a clear violation of Plaintiff's constitutional rights. Plaintiff seeks immediate redress for these ongoing violations and a remedy for the broader systemic harm caused by the abuse of judicial power and the manipulation of law enforcement and emergency services by private parties like the McCloskeys.

113.  Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), Washtenaw County is liable for constitutional violations resulting from its policies, practices, or customs, including its failure to safeguard due process rights and prevent judicial overreach. The County's inability to protect Plaintiff from these abuses reflects a broader institutional failure.


## Rule 15 Addition: Allegations Against Defendants Bennett and Kirkland

114.  In addition to the constitutional misconduct by judicial officers and other private defendants, attorneys **Jeffery G. Bennett** and **Jessica Kirkland**, though private actors, knowingly and materially contributed to the ongoing deprivation of Plaintiff's constitutional and parental rights through a sustained pattern of bad faith litigation, evidentiary suppression, and collusion with state actors.

115.  Acting in concert with Defendants Alyssa and Scott McCloskey and Defendant Slay, Defendant Bennett failed to undertake a meaningful, impartial, or child-focused inquiry into Plaintiff's parental fitness. Despite the absence of any adjudicated harm to the child and Plaintiff's repeated efforts to challenge the record, Bennett continued to support and advocate for indefinite suspension of Plaintiff's custodial rights based solely on speculative or retaliatory allegations.

116.  Defendant Bennett knowingly relied on unverified claims and false testimony and deliberately withheld exculpatory evidence that was critical to Plaintiff's defense and parental reinstatement efforts that were ex parte taken from him, thereby depriving Plaintiff of a meaningful opportunity to be heard.

117.  Among the evidence suppressed was video footage captured by Defendant Scott McCloskey showing Defendant Alyssa McCloskey physically assaulting the minor child to unlawfully interrupt a

custodial transfer to Plaintiff. Although this footage unequivocally contradicted the narrative presented in court, Defendant Bennett failed to disclose or present the video prior to the January 24 2025 evidentiary hearing, where both McCloskeys falsely testified under oath that Plaintiff had harmed the child.

118.  The **Michigan State Police report (MSP 12-8577-24)**, filed on **November 3, 2024**, confirms that the child himself reported being physically injured by Defendant Alyssa McCloskey and described emotional distress from his mother and stepfather's conduct. The report included the child's clear opposition to further contact with the McCloskey's and supported Plaintiff's position entirely—yet Bennett chose to conceal and ignore this evidence.

119.  Despite the child's disclosures, Defendants Alyssa and Scott McCloskey never sought medical treatment, filed a police report, or documented the injury—better framing their selective and manipulative invocation of state resources in every other instance.

120.  During the hearing, Defendant Bennett eventually admitted that he had the video in his possession, yet he opposed Plaintiff's request to review it prior to the conclusion of the hearing and failed to disclose its contents on the record.

121.  On or about <u>June 13, 2025</u>, Defendants Bennett, Kirkland, and the McCloskey's jointly obstructed Plaintiff's reunification with his son by recommending further restrictions on parenting time, despite a complete absence of new allegations or findings and while prior due process violations remained unresolved.

122.  Specifically, they proposed sustaining Plaintiff's contact to three (3) hours per month of supervised video calls, supervised *still* by Defendant Scott McCloskey.

123.  Defendant Kirkland joined these actions with full knowledge of their factual and legal deficiencies, contributing to the ongoing suppression of evidence, facilitation of perjured testimony, and the targeting of Plaintiff's protected speech and legal activity.

124.  Both Bennett and Kirkland acted in a manner that was objectively unreasonable and in clear violation of Plaintiff's First and Fourteenth Amendment rights, including the right to familial association, due process of law, and equal protection.

125.  Although not public officials, Bennett and Kirkland acted **under color of law** by **conspiring and jointly participating** with state actors to use the legal process as a tool of retaliation. Their involvement was not passive—they were active participants in a public-private effort to deprive Plaintiff of his civil rights.

*McGough v. Washtenaw County, et al.* | U.S. District Court - Eastern District of Michigan

---

126.  Their actions included:

- advancing false narratives in court proceedings,

- objecting to meaningful reunification,

- suppressing exculpatory video evidence,

- supporting perjured and hearsay testimony, and

- retaliating against Plaintiff for exercising constitutional rights through litigation.

127.  These acts, taken in **joint action with judicial officers and public entities**, resulted in clear
violations of the First, Fourth, and Fourteenth Amendments, including:

- deprivation of Plaintiff's liberty without due process,

- denial of equal protection of the law,

- malicious prosecution,

- retaliation for protected activity, and

- obstruction of familial association.

128.  Because these acts fall outside the scope of legitimate legal advocacy and were done in concert with
state actors, **Bennett and Kirkland are not entitled to immunity**. Their conduct constitutes a
deliberate, knowing abuse of process and legal authority to violate clearly established constitutional
rights.

## IV Federal Claims (42 U.S.C. 1983)

**1. Unlawful Arrest and Warrantless Seizure (Fourth Amendment)**

- Basis: Plaintiff was arrested without a warrant, probable cause, exigent circumstances, or reasonable suspicion, in violation of the Fourth Amendment's protections against unreasonable searches and seizures.
- Supported by: ¶31–¶34, ¶39–¶41

—

**2. False Imprisonment and Fabrication of Charges (Fourth Amendment)**

- Basis: Officers unlawfully detained Plaintiff and fabricated charges of resisting and obstructing (R&O) to justify the arrest retroactively.
- Supported by: ¶35–¶40, ¶52–¶55

—

**3. Excessive Force and Criminalization of Lawful Resistance (Fourth Amendment)**

- Basis: Officers escalated force during an unlawful arrest, criminalizing Plaintiff's constitutionally protected right to resist an illegal seizure.
- Supported by: ¶41–¶43

—

**4. Malicious Prosecution and Retaliatory Legal Process (Fourth & Fourteenth Amendments)**

- Basis: Defendants, including prosecutors and private parties, knowingly advanced and maintained false criminal and civil charges to punish Plaintiff for asserting his rights.
- Supported by: ¶50–¶55, ¶58–¶60, ¶68–¶69, ¶117–¶126

—

**5. Suppression of Exculpatory Evidence / Brady Violations (Fourteenth Amendment)**

- Basis: State and private actors acting under color of law intentionally withheld exculpatory video evidence and police reports, including those showing Defendant Alyssa McCloskey assaulting the minor child, while permitting fabricated and perjured testimony.
- Supported by: ¶46–¶48, ¶62–¶63, ¶117–¶120

—

**6. Judicial Overreach and Separation of Powers Violation (Fourteenth Amendment)**

- Basis: Judicial officers added criminal charges sua sponte without notice or motion, violating procedural due process and the separation of powers.

- Supported by**:** ¶64–¶67

---

### 7. Procedural Due Process Violations – Criminal Proceedings (Fourteenth Amendment)

- Basis**:** Plaintiff was denied access to virtual hearings, subject to unlawful bench warrants, and systematically ignored in his filings—resulting in unconstitutional outcomes and prejudicial delays.
- Supported by: ¶71–¶72, ¶88–¶90

---

### 8. Procedural and Substantive Due Process Violations – Family Court (Fourteenth Amendment)

- Basis: Defendants suspended Plaintiff's parenting time, denied reunification, enforced contempt proceedings without adjudicated harm, and conducted ex parte actions violating both procedural and substantive due process rights.
- Supported by: ¶93–¶100, ¶101–¶106, ¶108–¶110, ¶114–¶124

---

### 9. First Amendment Retaliation and Interference with Protected Activity

- Basis: After Plaintiff filed legitimate court petitions, notices, and complaints, Defendants retaliated through contempt charges, parenting-time obstruction, and legal harassment designed to chill Plaintiff's speech and advocacy.
- Supported by: ¶73–¶79, ¶89, ¶103–¶104, ¶124–¶126

---

### 10. Conspiracy to Violate Civil Rights – Public and Private Actors (42 U.S.C. § 1983 & § 1985)

- Basis: Defendants including Bennett, Kirkland, McCloskeys, court officials, and law enforcement conspired to deprive Plaintiff of his constitutional rights through coordinated action, shared objectives, and retaliatory abuse of judicial process.
- Supported by: ¶94–¶98, ¶114–¶128

---

### 11. Suppression of Parent–Child Association (First & Fourteenth Amendments)

- Basis: Defendants, acting in concert, intentionally and unjustifiably interfered with Plaintiff's protected liberty interest in maintaining a familial relationship with his child.
- Supported by: ¶93–¶95, ¶117–¶124

---

**12. Supervisory and Legal Advocate Liability – Bennett & Kirkland**

- Basis: Defendants Bennett and Kirkland acted with deliberate indifference, bad faith, and joint participation in violating Plaintiff's rights. Their roles as legal professionals do not immunize them from liability for constitutional violations when acting in conspiracy with state actors.
- Supported by: ¶114–¶128

**13. Municipal Liability Under *Monell* (Wayne County and Agencies)**

- Basis: The unconstitutional conduct was permitted and perpetuated by county policies, customs, failures in training or oversight, and a systemic indifference to Plaintiff's rights.
- Supported by: ¶113–¶114

## VI. Relief Requested

Accordingly, Plaintiff seeks the following relief:

**1. Declaratory Relief**

A. A declaration that Defendants, jointly and severally, violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.
B. A declaration that the **ex parte suspension** of Plaintiff's parenting time and **restrictions on court access** were unconstitutional and imposed without due process.

**2. Preliminary and Permanent Injunctive Relief**

A. A preliminary and permanent injunction enjoining Defendants from:
   a. Interfering with Plaintiff's lawful custodial and visitation rights.
   b. Enforcing any restrictions that unlawfully impede Plaintiff's access to the courts or communication with his child.
B. An order **restoring Plaintiff's parenting time**, including emergency ex parte reinstatement where necessary to prevent irreparable harm to the parent-child relationship.
C. An order **granting Plaintiff legal and physical custody** of his minor child, in light of the pattern of bad-faith misconduct—including misuse of emergency services, malicious prosecution, and deliberate parental alienation—by Defendants, which has harmed the child's best interests and severed parent-child contact.

**3. Dismissal of Pending Charges**

A. An order recommending or referring the **dismissal with prejudice** of any criminal charges or proceedings unlawfully initiated through false reports, retaliatory conduct, or due process violations.

*Note*: While federal courts do not generally dismiss state charges outright, they may issue declaratory or injunctive relief where constitutional violations justify intervention. This section is now more carefully framed to avoid dismissal based solely on comity principles.

**4. Independent Investigation**

A. Appointment of a **Special Master** pursuant to Fed. R. Civ. P. 53 to investigate:
   a. Alleged judicial and prosecutorial misconduct;
   b. False reporting and abuse of emergency services by private parties acting under color of law;
   c. Systemic due process violations in the Washtenaw County Trial Court's Family and Criminal Divisions.

**5. Monetary Damages**

A. **Compensatory damages** for emotional distress, reputational injury, legal costs, and loss of parenting time due to Defendants' conduct.
B. **Punitive damages** against all individual Defendants who acted with malice, fraud, or deliberate indifference to Plaintiff's constitutional rights.
C. An award of **reasonable attorneys' fees and costs** pursuant to 42 U.S.C. § 1988.

**6. Sanctions and Accountability**

A. Referral for **civil contempt proceedings** or disciplinary action against judicial or prosecutorial officials who willfully violated constitutional or ethical duties.
B. **Referral of Alyssa and Scott McCloskey** for criminal investigation under applicable state and federal law for submitting knowingly false reports to law enforcement or CPS in violation of Plaintiff's civil rights.

**7. Other Relief**

Any additional relief the Court deems just, proper, and equitable to redress the injuries suffered by Plaintiff and to prevent further violations of his rights.

---

### VI. Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

---

### VI. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

---

Issued and affirmed without prejudice and with full reservation of all rights.

Respectuflly Submitted,

By: Daniel Ryan McVeigh

Dated July 2, 2025

CR No: 240013842

**YPSILANTI PD**
505 W MICHIGAN AVE
YPSILANTI MI 48197
734-483-9510

**Case Report**

| Administrative Details: | |
|---|---|
| CR No | Subject |
| 240013842 | SUPPLEMENT REPORT |
| Report Date/Time | Occurrence Date/Time |
| 10/11/2024 02:46 | 10/11/2024 02:46 |
| Location | Call Source |
| 113 W MICHIGAN AVE | 911 |
| Dispatched Offense | Verified Offense |
| 5393 Disorderly Conduct (Other) | 1313 Assault/ Battery/Simple (Incl Domestic and Police Officer |
| County | City/Twp/Village |
| 81 - Washtenaw | 80 - Ypsilanti |
| Division | |
| Patrol | |

| Action Requested: | |
|---|---|
| [ ] Arrest warrant | [ ] Review only |
| [ ] Search warrant | [ ] Forfeiture |
| [ ] Juvenile petition | [ ] Other |

All Rights Reserved Without Prejudice
Submitted By: **Daniel Ryan McGough C/O PO Box 970081 Ypsilanti MI [48197]**
**313-348-0459** | dryan616@icloud.com                Page 27 of 60

CR No: 240013842

Redaction ID: 463985

| Offenses: | | |
|---|---|---|

| 1313 - Assault/ Battery/Simple (Incl Domestic and Police Officer   [YCSMITHL (402)] | | |
|---|---|---|
| **IBR Code / IBR Group** | **Offense File Class** | |
| 13B - Simple Assault / A | 13001 - NONAGGRAVATED ASSAULT | |
| **Crime Against** | **Location Type** | **Offense Completed** |
| PE | 18 - Parking Lot/Garage | Completed |
| **Domestic Violence** | **Hate/Bias** | |
| No | 00 - None (No Bias) | |
| **Using** | | |
| A-Alcohol: No   C-Computer Equipment: No   D-Drugs/Narcotics: No | | |
| **Weapons** | | |
| 40 - Personal Weapons (Hands, Feet, Teeth, etc.) | | |
| **Criminal Activity** | | |
| N - None/Unknown | | |

| 4801 - Resisting Officer   [YCSMITHL (402)] | | |
|---|---|---|
| **IBR Code / IBR Group** | **Offense File Class** | |
| 90Z - All Other Offenses / B | 48000 - OBSTRUCTING POLICE | |
| **Crime Against** | **Location Type** | **Offense Completed** |
| | 18 - Parking Lot/Garage | Completed |
| **Domestic Violence** | **Hate/Bias** | |
| No | 00 - None (No Bias) | |
| **Using** | | |
| A-Alcohol: No   C-Computer Equipment: No   D-Drugs/Narcotics: No | | |

| 4802 - Obstruct Criminal Investigation   [YCSMITHL (402)] | | |
|---|---|---|
| **IBR Code / IBR Group** | **Offense File Class** | |
| 90Z - All Other Offenses / B | 48000 - OBSTRUCTING POLICE | |
| **Crime Against** | **Location Type** | **Offense Completed** |
| | 18 - Parking Lot/Garage | Completed |
| **Domestic Violence** | **Hate/Bias** | |
| No | 00 - None (No Bias) | |
| **Using** | | |
| A-Alcohol: No   C-Computer Equipment: No   D-Drugs/Narcotics: No | | |

| Narrative: |
|---|
| CR No: 240013842-001   Written By: YCTYSOND (00395)   Date: 10/11/2024 04:47 AM |

SUPPLEMENT REPORT:

R/O Assault on officer

LOCATION:

Puffer Red's

113 W. Michigan Ave.

Ypsilanti, MI 48197

INFORMATION:

While searching a Daniel McGough who was under arrest for interfering with police investigation.
I had Daniel at the back door of Sgt. Gibbs patrol vehicle Daniel made statements about dashing

Page 2 of 4

Created On 10/16/2024 12:17 PM

All Rights Reserved Without Prejudice

CR No: 240013842

Redaction ID: 463885

referring to running. I told Daniel to relax as I held him against the vehicle. At which time Daniel kicked back with his right leg striking me in the groin. I then placed Daniel in the back of Sgt. Gibbs' patrol vehicle.

STATUS:
Open.

SUBMITTED:
Tyson#395

| CR No: 240013842-002   Written By: YCSMITHL (402)   Date: 10/11/2024 05:59 AM |

NATURE OF INCIDENT:
Resisting and Obstructing, Obstructing an Investigation, and Assault on a Peace Officer

DATE/TIME:
10/11/2024 0246HRS

LOCATION:
113 W Michigan Ave
Ypsilanti, MI 48197

ARRESTEE:
Daniel Mcgough

INFORMATION:
I was dispatched to 113 W Michigan Ave reference a fight in progress. Dispatch advised a white male with a large gray sweatshirt and a black male is in the parking lot behind puffer red fighting. Upon arrival, I started canvassing the area and observed a white male surrounded with alcoholic cans laid against a vehicle and the following occurred.

CONTACT WITH DANIEL MCGOUGH:
While I was investigating, Daniel Mcgough began to approach Sgt. Gibbs and began to consistently question Sgt.Gibbs in a disorderly manner. Sgt Gibbs gave multiple verbal warning to Daniel to leave from the location to deescalate the situation. Daniel continuously obstructed the investigation after multiple warnings from Sgt. Gibbs and officers on scene. While placing Daniel into handcuffs, he consistently resisted officers by placing both of his forearms and hands together against the patrol vehicle as officers tried to place him in custody. Daniel was escorted

Page 3 of 4

Created On 10/16/2024 12:17 PM