United States District Court
Eastern District Of Michigan
Southern Division

Daniel R. McGough,

       Plaintiff,

v.                               Case No. 25-cv-11226
                                        Honorable Mark A. Goldsmith
Washtenaw County, *et al.*,         Magistrate Judge David R. Grand

       Defendants.

## DEFENDANTS WASHTENAW COUNTY, ADMINISTRATOR GREGORY DILL, PROSECUTOR ELI SAVIT, APA ASHLEY LONDY, HONORABLE CEDRIC SIMPSON, LISA FUSIK, STEVEN MATTHEWS, TAKISHA MASTIN, HONORABLE ARIANNE SLAY, AND HONORABLE PATRICK CONLIN'S MOTION TO DISMISS

In lieu of an answer to Plaintiff's complaint, Washtenaw County, Administrator Gregory Dill, Prosecutor Eli Savit, APA Ashley Londy, Honorable Cedric Simpson, Lisa Fusik, Steven Matthews, Takisha Mastin, Honorable Arianne Slay, and Honorable Patrick Conlin (collectively, "County Defendants") for reasons more fully stated in the accompanying brief request this Honorable Court dismiss Plaintiff's complaint against them pursuant to the Federal Rules of Civil Procedure 12(b)(6). In accordance with Local Rule 7.1(a)(2)(D), County Defendants did not seek concurrence in the motion because Plaintiff is incarcerated and proceeding pro se.

1

Wherefore, County Defendants respectfully request this Honorable Court grant their motion and dismiss Plaintiff's complaint in its entirety with prejudice.

Respectfully Submitted,

/s/ *Michael L. Auten*
Michael L. Auten (P81884)
Washtenaw County Corporation Counsel
220 N. Main St., PO Box 8645
Ann Arbor, MI 48107
(734) 222-3427
autenm@washtenaw.org
Attorney for Defendants
Washtenaw County, Administrator Gregory
Dill, Prosecutor Eli Savit, APA Ashley
Londy, Honorable Cedric Simpson, Lisa
Fusik, Steven Matthews, Takisha Mastin,
Honorable Arianne Slay, Honorable Patrick
Conlin

Dated: August 27, 2025

United States District Court
Eastern District Of Michigan
Southern Division

Daniel R. McGough,

      Plaintiff,

v.

Washtenaw County, *et al.*,

      Defendants.

Case No. 25-cv-11226
Honorable Mark A. Goldsmith
Magistrate Judge David R. Grand

**BRIEF IN SUPPORT OF DEFENDANTS WASHTENAW COUNTY, ADMINISTRATOR GREGORY DILL, PROSECUTOR ELI SAVIT, APA ASHLEY LONDY, HONORABLE CEDRIC SIMPSON, LISA FUSIK, STEVEN MATTHEWS, TAKISHA MASTIN, HONORABLE ARIANNE SLAY, AND HONORABLE PATRICK CONLIN'S MOTION TO DISMISS**

**Concise Statement of Issues Presented**

I.    Are Judge Simpson, Judge Conlin, and Judge Slay entitled to absolute judicial immunity?

Answer: Yes

II.   Are Prosecutor Savit and APA Londy entitled to absolute prosecutorial immunity?

Answer: Yes

III.  Has Plaintiff failed to state a viable claim under 42 USC. § 1983?

Answer: Yes

## Controlling or Most Appropriate Authorities

- *Ashcroft v Iqbal*, 556 US 662 (2009)
- *Bell Atlantic Corporation v Twombly*, 550 U.S. 544 (2007)
- *Bishop v Lucent Techs., Inc*, 520 F3d 516, 519 (CA 6, 2008)
- *Brady v Maryland* 373 US 83 (1963)
- *Giglio v United States*, 405 US 150, 154 (1972)
- *Heck v Humphrey*, 512 US 477, 486-87 (1994)
- *Imbler v Pachtman* 424 US 409 (1976)
- *Johnson v Turner*, 125 F3d 324, 333 (6th Cir 1997)
- *Jones v Shankland,* 800 F2d 77, 80 (6th Cir 1986)
- *Koubriti v Convertino* 593 F3d 459, 467 (6th Cir 2010)
- *Lillard v Shelby County Bd. Of Ed.*, 76 F.3d 716, 726 (6th Cir 1996)
- *Monell v New York City Department of Social Services*, 436 US 658, 690-91 (1978)
- *Stump v Sparkman*, 435 US 349, 356 (1978)
- *Sykes v Anderson*, 625 F3d 294, 308 (6th Cir 2010)
- 42 U.S.C. § 1983
- Fed. R. Civ. P. 12(b)(6)

## Introduction

Plaintiff has brought a multitude of frivolous and procedurally inappropriate lawsuits and filings against Washtenaw County or some variation of Defendants related to the Washtenaw County Court System and the Washtenaw County government, including but not limited to district and circuit court judges, court administrators, the county administrator, and county prosecutors. In the instant action, Plaintiff mainly rehashes the same allegations from another complaint currently pending before this Honorable Court in case number 24-cv-13352. The only distinction is this new litigation also contains claims allegedly related to his pending felony case where he faces three counts of assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1. Case 24-cv-13352 has been recommended for dismissal based on a 12(b)(6) motion filed by Washtenaw County and its individually named defendants. Plaintiff also has a pending case against the Washtenaw County Trial Court, 25-cv-10571, which is a Petition for Writ of Habeas Corpus related to the child custody dispute only. The complaint in that case has not yet been served on Defendant. Additionally, a search of Washtenaw County Trial Court register of actions shows two additional felony cases filed with the Trial Court against Plaintiff on August 25, 2025.

## Facts

Plaintiff, Daniel McGough, has been involved in a custody dispute in the 22nd Circuit Court for over five years with Alyssa McCloskey. Based on the docket report and related filings labeling the custody dispute as highly contentious would be an understatement. Plaintiff is no stranger to legal filings as throughout the custody dispute he has initiated multiple filings in the state court action in both a represented and *pro se* fashion. Plaintiff has also initiated five cases with the Michigan Court of Appeals stemming from the facts in this case and currently has at least three actions pending with this honorable court related to the child custody dispute.

While the docket report is lengthy, currently seven pages, Plaintiff's instant complaint again appears to be limited to a short window of time beginning in late November 2024 in relation to the custody dispute and October 2024 in relation to Plaintiff's pending felony charges for assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1. Therefore, the facts recited her are limited to this time, though the custody dispute dates back to December 2019 and contains a lengthy and interesting list of filings by Plaintiff as well.

The crux of the current litigation before this honorable court in relation to the child custody dispute mostly stems from an order issued on November 20, 2024 suspending Plaintiff's parenting time until further court order and subsequent orders limiting or suspending Plaintiff's parenting time. The November 20th order was

2

signed in response to a November 19, 2024 filing by McCloskey of a *Verified Motion for Ex Parte Order, Affidavit in Support of Request for Ex Parte Order,* and accompanied by a letter from Dr. Catherine Hiltz, an *Ex Parte Order for Custody/Parenting Time And/Or Child Support*, and a police report supporting the allegations against Plaintiff in McCloskey's motion. (**Exhibit A).** McCloskey's reason for seeking an *ex parte* order was related to the now pending felony charges against Plaintiff. The order suspending Plaintiff's parenting time was signed on November 20, 2024. The order was issued *ex parte* as "[t]he Court was satisfied that irreparable injury, loss or damage will result from the delay required to effect notice." (**Exhibit B).** Five days later, on November 25, 2024, Plaintiff filed a twenty-page *Motion to Dissolve Ex Parte Order*, wherein he acknowledges that he was personally served with the November 20th order on November 22, 2024. The second page of the order gives notice to Plaintiff about the timeline for filing a written objection and what will happen if an objection is not filed. *Id.* On December 2, 2024, McCloskey's attorney, Veronica White, filed a *Motion for Vexatious Litigator Relief, Attorney Fees and Costs, and Other Relief.* This motion further outlines the significant amount of filing in the state court action by Plaintiff. On December 12, 2024, a hearing was held on multiple motions related to the custody dispute including the *Motion for Vexatious Litigator Relief, Attorney Fees and Costs, and Other Relief* and the *Motion to Dissolve Ex Parte Order.* For the reasons stated on

the record, the *Motion for Vexatious Litigator Relief, Attorney Fees and Costs, and Other Relief* was granted placing requirements on Plaintiff for future filing given his lengthy history of frivolous filings. Additionally, an evidentiary hearing was set to be held on January 24, 2025 for the *Motion to Dissolve Ex Parte Order*.

Plaintiff quickly sought other avenues for relief from the November 20th and December 12th orders. On December 10, 2024, Plaintiff filed a complaint for mandamus with the Michigan Court of Appeals. The COA properly considered the complaint as one for superintending control, but also properly dismissed for lack of jurisdiction on December 23, 2024 "because an appeal from [the November 20th and December 12th] orders is available." Upon that information, Plaintiff promptly filed an appeal with the COA that same day: December 23, 2024. However, on March 5, 2025, the appeal was dismissed for failure to cure filing defects in a timely manner.

Meanwhile, Plaintiff was also being prosecuted as a result of his October 11, 2024 arrest for assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1. **(Exhibit C).** Plaintiff was arraigned on October 11, 2024 before Magistrate Fink and Plaintiff chose to represent himself. **(Exhibit D).** Plaintiff was given a $5,000 personal recognizance bond and his Probable Cause Conference was set for October 24, 2024. *Id.* On October 20, 2024, Plaintiff sent a *Motion for Discovery, Subpoenas, Suppression, and Other Relief Related to Incident of October 11, 2024* to the Prosecutor's office who forwarded it to the District Court for

4

Plaintiff. Plaintiff failed to appear at his Probable Cause Conference, which was then reset for November 14, 2024. On November 14, 2024, APA Londy filed a response to Plaintiff's October 20, 2024 motion. **(Exhibit E).** Plaintiff's Probable Cause Conference was adjourned till December 5, 2024. On November 25, 2024 Plaintiff filed a *Formal Motion for an Evidentiary Hearing, Full Discovery, and Rescheduling of the Probable Cause Conference*. The Probable Cause Hearing was held on December 5, 2024. On December 13, 2024, APA Londy filed a response to Plaintiff's November 25 motion. **(Exhibit F).** Due to requested adjournments by Plaintiff, which were granted by Judge Simpson, Plaintiff's Preliminary Examination was held on February 11, 2025. **(Exhibit G).** An Amended Information Felony was then filed with the Court on February 13, 2025 with three counts of assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1. A Jury trial is currently scheduled for January 5, 2026 before Judge Slay. **(Exhibit H).**

## Standard of Review

"To survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v Lucent Techs., Inc*, 520 F3d 516, 519 (CA 6, 2008) (internal citation omitted). Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

## Law and Analysis

### I.    Judge Simpson, Judge Conlin, and Judge Slay are Entitled to Absolute Judicial Immunity.

The doctrine of absolute judicial immunity protects judges from suits seeking monetary damages based on judicial acts performed under proper jurisdiction. *Johnson v Turner*, 125 F3d 324, 333 (6th Cir 1997).  The principle of independent judicial decision- making "is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly."  *Christmas v Macomb Cnty. Cir. Ct.*, No. 07-10840, 2008 WL 251995, at *6 (ED Mich Jan. 30, 2008) (citing *Stump v Sparkman*, 435 US 349, 356 (1978)). Judicial immunity attaches so long as the act complained of was a judicial act (*i.e.*, a function normally performed by a judge while dealing with the parties in her judicial capacity) and was not taken in the absence of jurisdiction.  *See Pierson v Ray*, 386 US 547, 553-55 (1967); *Stump*, 435 US at 356-62. The Supreme Court has articulated a two-prong test to determine whether an act is "judicial" in nature.  *Stump*, 435 US at 362.   The Court must first consider whether the act is one that is "normally performed by a judge," and second, whether the parties dealt with the judge in his or her judicial capacity.  *Id.*; *Mireles v Waco*, 502 US 9, 11-12 (1991).

Plaintiff's Complaint alleges claims for Fourteenth Amendment due process violations, First Amendment retaliation, First and Fourteenth Amendment interference with familial association, and a § 1983 conspiracy claim against Judges

6

Simpson, Conlin, and Slay. However, Plaintiff's complaint fails to establish the facts to prove each and every claim brought against these judicial officials. Regardless, it is indisputable that the acts taken by the judicial officials in the course of their judicial duties with respect to Plaintiff's criminal and civil case fall squarely within the *Stump* test. First, Plaintiff has failed to plead any facts showing that the actions of the judicial officials was not "normally performed by a judge." Even more so, Plaintiff has failed to plead any facts showing actions were taken by the Judges outside of their judicial capacity. For these reasons, Judge Simpson, Judge Conlin, and Judge Slay are entitled to dismissal with prejudice.

## II. Prosecutor Savit and APA Londy are entitled to Absolute Prosecutorial Immunity.

The Supreme Court held in *Imbler v Pachtman* that "in initiating and in presenting the [government's] case," prosecutors act "quasi-judicially" and therefore enjoy the same absolute immunity as judges. 424 US 409 (1976). Relying on *Imbler*, the Sixth Circuit observed in *Koubriti v Convertino* that "prosecutors have absolute immunity from 'suits for malicious prosecution and for defamation, and ... this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial.'" 593 F3d 459, 467 (6th Cir 2010)(quoting *Burns,* 500 US at 484, 485 (1934)).

7

Additionally, "prosecutors have absolute immunity from civil liability for the non-disclosure of exculpatory information at trial." *Jones v Shankland,* 800 F2d 77, 80 (6th Cir 1986). In *Jones*, the plaintiff brought a § 1983 action against multiple county officials for numerous alleged violations relating to the plaintiff's trial and conviction for second-degree murder—a conviction which was later overturned on federal habeas review when it was determined that the prosecution had refused to disclose an eyewitness statement that made no mention of the plaintiff being involved in the shooting. In his civil complaint, the plaintiff alleged that three county prosecutors were liable for failing to disclose exculpatory information, including, but not limited to, the witness statement. The Sixth Circuit still found "that the individual county prosecutors were absolutely immune from personal liability in damage suits brought pursuant to 42 U.S.C. § 1983." *Id.* According to the panel, the plaintiff's claims were "clearly within the scope of immunity contemplated by the Supreme Court in *Imbler*." *Id.* Finding that the "non-disclosure of exculpatory information [is] certainly entitled to absolute immunity." *Id.*

Plaintiff alleges a claim for malicious prosecution and a claim for suppression of exculpatory evidence against Prosecutor Savit and APA Londy. Plaintiff's complaint is utterly devoid of facts to establish these claims. However, even if Plaintiff could establish the necessary facts for a malicious prosecution and suppression of exculpatory evidence claim against Prosecutor Savit and APA Londy,

these Defendants would still be entitled to dismissal under the doctrine of absolute prosecutorial immunity. For these reasons, Prosecutor Savit and APA Londy are entitled to dismissal with prejudice.

### III. Constitutional Claims (Count 4, 5, 6, 7, 8, 9, 11, 13)

A complaint must contain allegations concerning all of the material elements to sustain a recovery under a viable legal theory. *Lillard v Shelby County Bd. Of Ed*., 76 F.3d 716, 726 (6th Cir 1996). The Supreme Court in *Bell Atlantic Corporation v Twombly*, 550 U.S. 544 (2007), noted that it is significant that Rule 8(a)(2) requires a "showing" of entitlement to relief, rather than merely a "blanket assertion." *Id*. at 556. A plaintiff must "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. The Court held that a "showing that the pleader is entitled to relief" requires the allegation of sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of [entitlement to relief]." *Id*. at 556. Citing *Twombly*, the Supreme Court in *Ashcroft v Iqbal*, 556 US 662 (2009), explained that:

> the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of actions will not do." Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

9

*Id.* at 678 (citations omitted).  Although Rule 8(a) does not bar the courthouse door to plaintiffs for lack of perfect specificity, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-679.

Plaintiff claims violation of his First, Fourth, and Fourteenth Amendment rights and brings a § 1983 conspiracy claim against the County Defendants. However, his broad sweeping allegations are insufficient to establish violations under any of these constitutional or statutory provisions. Accordingly, Plaintiff has failed to establish the elements of any violation of his constitutional rights because he has failed to offer anything other than a blanket assertion of injury arising out of lawfully issued state court orders in a child custody matter and a felony criminal case pending against him. Notably, for most County Defendants, Plaintiff has failed to plead a single fact that shows any relation between them and Plaintiff whatsoever. Specifically, Defendants Administrator Gregory Dill, Prosecutor Eli Savit, Lisa Fusik, Steven Matthews, and Takisha Martin do not appear in the complaint other than under Section III. Parties. Finally, Plaintiff brings a Monell claim against Washtenaw County, but fails to plead any facts to support his allegation. Therefore, his complaint against all County Defendants must be dismissed under Fed. R. Civ. P. 12(b)(6) because he has failed to state a claim upon which relief can be granted.

## A. Malicious Prosecution Claim. (Count 4)

The Sixth Circuit recognizes a separate constitutionally cognizable claim of

malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction, and incarceration. *Sykes v Anderson*, 625 F3d 294, 308 (6th Cir 2010). To succeed on a malicious prosecution claim under 42 USC §1983, a plaintiff must prove the following: (1) criminal prosecution was initiated against plaintiff, and defendants made, influenced, or participated in the decision to prosecute; (2) lack of probable cause for the criminal prosecution; (3) as a result of the legal proceeding plaintiff suffered a deprivation of liberty apart from the initial seizure, and; (4) the criminal proceeding terminated in plaintiff's favor. *Id* at 308-309.

While Count IV. 4. of Plaintiff's Complaint [ECF No. 12, PageID. 95] alleges malicious prosecution against all Defendants, Plaintiff fails to prove the elements of a malicious prosecution claim. Most importantly Plaintiff has failed to prove the necessary element that the criminal proceeding terminated in plaintiff's favor. This is because he cannot present any proofs on this element, since the felony charges against Plaintiff resulting from his October 11, 2024 arrest are still pending. Pending charges can never be construed as a criminal proceeding terminating in Plaintiff's favor and for this reason alone Plaintiff's malicious prosecution claim fails on its face.

Additionally, Plaintiff has failed to establish that there is a lack of Probable Cause for his prosecution. To the contrary, the evidence proves otherwise, as the

11

District Court found Probable Cause not only for Plaintiff's initial count of assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1, but for two additional counts on that charge as well. Therefore, Plaintiff has failed to prove the elements of his malicious prosecution claim and as such it should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

### B. *Brady* Violation. (Count 5)

To establish a violation under *Brady v Maryland*, a plaintiff must prove that in his or her criminal proceeding, defendant withheld exculpatory or impeachment evidence; the state suppressed that evidence; and the suppression resulted in prejudice, meaning that the suppressed evidence was material. 373 US 83 (1963); *Robinson v Mills,* 592 F.3d 730, 735 (6th Cir. 2010). Material evidence is that which creates a reasonable probability that had the evidence been disclosed to the defense, the result of the trial would have been different. *Cone v. Bell*, 556 US 449, 470 (2009). Disclosure to the defense in a criminal proceeding is ultimately the responsibility of the prosecutor. *Giglio v United States*, 405 US 150, 154 (1972). If a conviction is vacated due to a *Brady* violation, the criminal defendant can bring a §1983 action. *Heck v Humphrey*, 512 US 477, 486-87 (1994).

Plaintiff's *Brady* claim cannot survive for three key reasons. First, as detailed above, even if Plaintiff properly pleaded a *Brady* claim in this case, Prosecutor Savit and APA Londy are entitled to absolute prosecutorial immunity on Plaintiff's § 1983

12

*Brady* claim. No other County Defendant had a responsibility under *Brady*. Secondly, Plaintiff has wholly failed to establish a *Brady* violation. Plaintiff's criminal charges are still pending and no trial has been had. Plaintiff attempts to bring his *Brady* claim as a § 1983 action. However, under *Heck* a key requirement of a § 1983 action for a *Brady* violation is a vacated conviction. Plaintiff has not even gone to trial yet, so he cannot have a vacated conviction as required under *Heck*. Even if Plaintiff can sustain a *Brady* violation, the appropriate forum for his claim is in the criminal case, not in a § 1983 action. Finally, Plaintiff has failed to show how the alleged statements and omissions that were materially exculpatory were allegedly not disclosed in violation of *Brady*. [ECF No. 12, PageID.84]. Plaintiff clearly knows about the alleged statements and omissions because he is the one stating they exist, which would seem to defeat his entire argument that they were withheld in violation of *Brady*. For these reasons, Plaintiff's *Brady* violation claim must be dismissed against the County Defendants with prejudice.

### C. 14th Amendment Due Process Violation Claims. (Counts 6, 7, and 8)

Plaintiff brings a plethora of 14th Amendment due process violation claims related to both his child custody dispute and his pending felony criminal case for assaulting/resisting/obstructing a police officer contrary to MCL 750.81(d)1.

Plaintiff's procedural due process claims must fail in both his custody dispute and his pending criminal case because under a procedural due process § 1983 claim,

a plaintiff may not seek relief "without first  pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." That is, the "plaintiff must prove the inadequacy of state remedies as an element of her constitutional tort." *Id.*

Plaintiff has wholly failed to plead this necessary element in his Complaint. Since Plaintiff's claim arises out of a state court judicial proceeding, it is entirely unclear what process Plaintiff claims he was denied, let alone why the remedies implicit in such litigation are inadequate. Since Plaintiff does not assert within his Complaint facts allowing a determination that state  remedies  available  to  redress the  alleged  due  process  violations  are inadequate, Plaintiff's procedural due process claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Similarly, there is no support for a substantive due process claim either. To support  a  viable  substantive  due  process  claim  a  plaintiff  must  ordinarily demonstrate  an  "abuse  of  power ... [that]  shocks  the  conscience." *County  of Sacramento v Lewis,* 523 US 833, 846 (1998). Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Id.* The conduct must be "intended to injure" without any justifiable government interest." *Range v Douglas*, 763 F3d 573, 590 (6th Cir 2014). To succeed on the type of claim Plaintiff alleges here, the Sixth Circuit has stated that the plaintiff must plead that the "state official act[ed] with  a  culpable  state  of  mind  directed  at  the  family  relationship." *Chambers v*

*Sanders*, 63 F4th 1092, 1100 (6th Cir 2023). Further, "actions that collaterally impact the family relationship are insufficient to give rise to a substantive due process claim that the state has violated an individual's right to family integrity. . . Thus, many state actions with collateral effects on families are not constitutional violations." *Id.*

Plaintiff's substantive due process claims here hinge on sweeping allegations that appear to raise exactly the type of "collateral impact" to his family dynamic that merely grows out of a custody case's resolution, and which is insufficient to state a substantive due process claim. *Chambers*, 63 F4th at 1100. Therefore, Plaintiff has failed to establish how any of the actions taken arise to the level of a substantive due process claim and as such his claim must fail.

### D. First Amendment Retaliation Claim. (Count 9)

A plaintiff, in order to succeed on a First Amendment retaliation claim, must demonstrate the following: "(1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Strouss v Michigan Dep't of Corrections*, 250 F3d 336, 345 (6th Cir 2001).

Unsurprisingly, Plaintiff once again makes an allegation about a violation of his constitutional rights without offering support for how his rights were violated. Plaintiff's basis for alleging first amendment retaliation are broad sweeping claims that "[a]fter Plaintiff filed legitimate court petitions, notices, and complaints, Defendants retaliated through contempt charges, parenting-time obstruction, and legal harassment designed to chill Plaintiff's speech and advocacy." Plaintiff wholly fails to establish the constitutionally protected activity, how defendant's actions were chilling, and importantly how Defendant's actions were motivated as a response to Plaintiff's exercising of his constitutional rights. Plaintiff has failed to establish any element of a First Amendment retaliation claim and as such his claim must be dismissed.

### E.  Claim for Suppression of Parent-Child Association. (Count 11)

Plaintiff's Complaint in the instant case continues to reiterate the same allegations from case number 24-cv-13352, which has been recommended for dismissal, that Defendant Conlin and other County Defendants unlawfully suspended his parenting time. In the instant case, he brings a claim for violation of his First and Fourteenth amendment rights, which in the spirit of liberally construing Plaintiff's claims as a pro se, County Defendants will assume is an attempt to bring a Familial Association claim under the First and Fourteenth Amendments.

Nonetheless, Plaintiff's Familial Association claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as he has failed to establish the necessary elements of his claim.   Parents have a Fourteenth Amendment liberty interest in making decisions regarding the custody and control of their children and all family members enjoy a First Amendment right to familial association. *Troxel v Granville,* 530 US 57, 65–66 (2000) (recognizing Fourteenth Amendment right); *Moore v City of East Cleveland,* 431 US 494 (1977) (recognizing First Amendment right to familial association). The right to familial association is not absolute and must be balanced by "an equally compelling governmental interest in the protection of children." *Kottmyer v Maas,* 436 F3d 684, 690 (6th Cir 2006).

Courts have concluded that a parent's liberty interest in familial association is implicated where a child is removed from his or her parent's care and custody. Thus, a state agent must provide sufficient due process before terminating parental rights, *see Santosky v Kramer,* 455 US 745, 753 (1982).

Here Plaintiff claims that the alleged unlawful suspension of his parenting time was made due to his pending criminal charges and that he was not given the opportunity to be heard. [ECF 12, PageID.90]. However, as well documented, this is false. Plaintiff has had ample due process protections throughout his sustained custody dispute with Defendant McCloskey. Plaintiff continues to take issue with the November 20, 2024 order repeatedly arguing that it was issued without due

process protections, but again this is patently false. The evidence here lays out the opposite: Plaintiff was afforded substantial due process, he just doesn't like the result. While the November 20, 2024 order was issued *ex parte* there was good reason for doing so given the substantial evidence in McCloskey's motion. Even then, Plaintiff was given a chance to respond and did so by filing his own motion only five days later. A hearing was then held 17 days later and an evidentiary hearing was then set for the next month. At the evidentiary hearing, the suspension of Plaintiff's parenting time was upheld. Thus Plaintiff has failed to establish a First Amendment Familial Association claim and it is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### F. Monell Claim (Count 13)

It is well settled that in order to establish a claim under 42 U.S.C. § 1983 against a municipality, plaintiffs must plead and prove a custom, policy, practice and/or procedure which caused a violation of Plaintiff's constitutional rights. *Pembauer v Cincinnati*, 475 US 469 (1986); *Monell v New York City Department of Social Services*, 436 US 658, 690-91 (1978). With respect to proving a custom, policy, practice and/or procedure which caused an alleged constitutional violation, the same must have originated from a decision maker with final policy making authority. *Pembauer, supra* at 482.  Moreover, the custom, policy, practice and/or

procedure must be the "moving force" behind the alleged constitutional violation to establish municipal liability. *Monell, supra* at 694.

The *City of Canton v. Harris* line of cases allows a Plaintiff to establish a municipal "policy or custom" through presenting evidence that a failure to train and/or discipline shows deliberate indifference on the part of municipal policymakers to the rights of its citizens. *City of Canton, supra; Berry v. City of Detroit,* 25 F. 3d 1342 (6th Cir. 1994). In establishing a de facto municipal policy predicated on failure to train, a Plaintiff must show that the City's training programs are inadequate to the tasks being performed; the inadequacy is a result of the City's deliberate indifference; and that the inadequacy actually caused the Plaintiff's injury. *Berry* at 1346.

Here, Plaintiff has wholly failed to plead a *Monell* claim. Plaintiff's only basis for his alleged *Monell* claim does not contain a single fact about how the County should be liable under *Monell* for his alleged constitutional violations. Plaintiff has fallen way short of the legal standard necessary to plead a *Monell* claim and accordingly Defendant Washtenaw County must be dismissed.

## IV. Conspiracy Claim (Count 10)

In order to establish a claim for civil conspiracy, Plaintiff must demonstrate "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was

committed in furtherance of the conspiracy that caused the injury." *Robertson v Lucas*, 753 F3d 606, 622 (6th Cir 2014). "[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gavitt v Born*, 835 F3d 623, 647 (6th Cir 2016).

Plaintiff has failed to establish any evidence that the County Defendants conspired to deprive him of any constitutional rights. Nor has he established that an overt act was committed to further the alleged conspiracy. For these reasons, Plaintiff's claims of civil conspiracy must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the reasons stated above, County Defendants respectfully request this Honorable Court enter an order dismissing all claims against them in their entirety and with prejudice along with any other relief the Court may deem appropriate under the circumstances.

Respectfully Submitted,

/s/ *Michael L. Auten*
Michael L. Auten (P81884)
Washtenaw County Corporation Counsel
220 N. Main St., PO Box 8645
Ann Arbor, MI 48107
(734) 222-3427
autenm@washtenaw.org

20

Attorney for Defendants
Washtenaw County, Administrator Gregory
Dill, Prosecutor Eli Savit, APA Ashley
Londy, Honorable Cedric Simpson, Lisa
Fusik, Steven Matthews, Takisha Mastin,
Honorable Arianne Slay, Honorable Patrick
Conlin

Dated: August 27, 2025

## Certificate of Service

I hereby certify that on August 27, 2025, I electronically filed the foregoing

papers with the Court Clerk using the ECF system, which will send notice to all

ECF filers of record. Additionally, I have sent a copy to Plaintiff's last known

address as on record with this Honorable Court at the time of filing.

/s/ *Michael L. Auten*
Michael L. Auten (P81884)