UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL RYAN MCGOUGH,

            Plaintiff,

v.

WASHTENAW, COUNTY OF, *et. al.*,

            Defendants.

_____/

Civil Action No. 25-11226

Mark A. Goldsmith
United States District Judge

David R. Grand
United States Magistrate Judge

### REPORT AND RECOMMENDATION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 41(b), AND TO DENY AS MOOT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 29, 33, 35, 40)

Pro *se* plaintiff Daniel Ryan McGough ("McGough") commenced this civil rights action on April 29, 2025, pursuant to 42 U.S.C. § 1983 against Washtenaw County and numerous municipalities, law enforcement officers, judicial officers, prosecutors, and others who he claimed violated his civil rights.[1] His allegations arise out of his felony arrest, state criminal charges, and subsequent termination of his parental rights that played out over various Washtenaw County Circuit Court actions, at least some of which were pending at the time he commenced this action. (ECF No. 1). On July 2, 2025, McGough filed an amended complaint that is the operative one in this case. (ECF No. 12).

---

[1] Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 6).

I.  REPORT

A.  Background

McGough brings the instant action alleging that the state "criminal and family court systems functioned in concert to deprive Plaintiff of his liberty, reputation, and parental relationship…." (ECF No. 12, PageID.74). His claims stem in large part from his alleged "unlawful[] arrest[] by officers of the Ypsilanti Police Department without a warrant, probable cause, or reasonable suspicion," which was part of a "broader pattern of police misconduct." (ECF No. 12, PageID.75). He circuitously claims that his arrest and the subsequent charges brought against him impacted his parental rights, because the assigned judge's "decision to suspend Plaintiff's parental rights was directly influenced by the flawed felony charges he oversaw…" (*Id.*).

His unlawful arrest claims arise from his allegation that the officers detained him without probable cause. (ECF No. 12, PageID.82). He argues that the evidence they used to arrest him – that he kicked an officer – was essentially manufactured after his illegal detention. (*Id.*, 82-85). As McGough recounts, he had an evidentiary hearing on this matter, but he claims that the evidentiary hearing was unfair because the judge would not permit him to present video footage. (*Id.*, PageID.86). McGough then details several lawsuits he has since initiated to attempt to remedy the alleged defects in his evidentiary hearing and arrest. (*Id.*, PageID.86-89).

Most of McGough's other allegations relate to the termination of his parental rights in different state court litigation. (*Id.*, PageID.89). McGough alleges that the judge who oversaw his parental rights termination hearing was the Chief Judge of the Washtenaw

2

County Circuit Court at the time of his felony proceedings, and therefore, his "position and influence allowed him to improperly use the criminal proceedings against Plaintiff in the context of the family court matters." (*Id.*, PageID.89).  At some point thereafter, another judge took over the case, and McGough claims that that judge "used the pending criminal charges – despite their lack of evidentiary support – as justification to prolong and effectively ban Plaintiff's access to his child…" (*Id.*, PageID.91).

Based on the above facts, McGough pleads thirteen counts in his operative amended complaint aimed at apparently anyone who had anything to do with the aforementioned state court proceedings, including: Washtenaw County and certain of its employees (Gregory Dill, County Administrator, Eli Savit, County Prosecutor, Ashley Londy, County Assistant Prosecutor, Washtenaw County District Judge Cedric Simpson, Lisa Fusik, Washtenaw County District Court Administrator, Steven Matthews, Washtenaw County Circuit Court Administrator, Takisha Mastin, Washtenaw County Circuit Court Supervisory Clerk, Judge Arianne Slay, Washtenaw County Circuit Court Judge, Judge Patrick Conlin, Jr., Washtenaw County Circuit Court Judge) (collectively, the "Washtenaw County Defendants"); the City of Ypsilanti and Ypsilanti Police Officer Darnell Tyson (collectively the "Ypsilanti Defendants"); Alyssa McCloskey (who was opposite McGough in the child custody litigation) and her husband Scott McCloskey (the "McCloskeys"); Jeffrey Bennett (Alyssa McCloskey's lawyer during the child custody proceedings); Jessica Kirklin[2] (Alyssa McCloskey's lawyer in other family court

---

[2] McGough mistakenly identifies Ms. Kirklin as "Jessica Kirkland" in his amended complaint. (ECF No. 12).  The Court will use her correct name.

3

proceedings); and 10 John/Jane Doe defendants. He pleads the following claims under the Fourth Amendment: (1) "Unlawful Arrest and Warrantless Seizure"; (2) "False Imprisonment and Fabrication of Charges"; (3) "Excessive Force and Criminalization of Lawful Resistance"; and (4) "Malicious Prosecution and Retaliatory Legal Process."[3] (ECF No. 12, PageID.95). Under the Fourteenth Amendment, he pleads: (5) "Suppression of Exculpatory Evidence / Brady Violations"; (6) "Judicial Overreach and Separation of Powers Violation"; (7) "Procedural Due Process Violations – Criminal Proceedings"; and (8) "Procedural and Substantive Due Process Violations – Family Court." (*Id.*, PageID.95-96). McGough also pleads the following claims: (9) "First Amendment Retaliation and Interference with Protected Activity"; (10) "Conspiracy to Violate Civil Rights – Public and Private Actors (42 U.S.C. § 1983 & § 1985)"; (11) "Suppression of Parent – Child Association (First & Fourteenth Amendments)"; (12) "Supervisory and Legal Advocate Liability – Bennett & Kirkland"; and (13) "Municipal Liability Under *Monell* (Wayne County and Agencies)." (*Id.*, PageID.96-97).

On August 20, 2025, the McCloskeys filed a motion to dismiss (ECF No. 29), and defendants Kirklin and Bennett filed separate motions to dismiss on August 25, 2025 (ECF Nos. 33, 35). On August 26, 2025, the Court issued an Order requiring McGough to file a response to those motions "on or before **September 19, 2025.**" (ECF No. 37, PageID.290) (emphasis in original). The Court expressly warned McGough that "**[f]ailure to file a timely response may result in a recommendation that Defendant's motion be granted**

---

[3] McGough pleads count 4 "Malicious Prosecution and Retaliatory Legal Process under the Fourth and Fourteenth Amendments.

4

**and/or that Plaintiff's case be dismissed.**" (*Id.*) (emphasis in original).

On August 27, 2025, the Washtenaw County Defendants filed a motion to dismiss. (ECF No. 40).[4] The following day, the Court issued another Order requiring McGough to file a response and setting the deadline for his response "on or before **September 22, 2025.**" (ECF No. 41, PageID.373) (emphasis in original).  Again, the Court expressly warned McGough that his "**[f]ailure to file a timely response may result in a recommendation that Defendant's motion be granted and/or that Plaintiff's case be dismissed.**" (*Id.*) (emphasis in original).

And, on September 2, 2025, the Court issued an amended Order requiring a response to the motions to dismiss filed by defendants Bennett, Kirklin, and the McCloskeys, this time setting the deadline "on or before **September 26, 2025.**" (ECF No. 42, PageID.375) (emphasis in original).  Once, again, the Court provided the same bolded and underlined warning to McGough that "**[f]ailure to file a timely response may result in a recommendation that Defendant's motion be granted and/or that Plaintiff's case be dismissed.**" (*Id.*) (emphasis in original).

None of the Court's Orders to McGough were returned as undeliverable.  Yet, not only has McGough not responded to any of the motions to dismiss, the docket reflects no filings whatsoever by McGough since those motions were filed.

---

[4] The only defendants not to have filed motions to dismiss are the Ypsilanti Defendants and the unnamed Doe defendants.

**B.    Analysis**

Federal Rule of Civil Procedure 41 governs dismissals of actions. As to involuntary dismissals, Rule 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) … operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). It is clear that, despite the somewhat permissive language of Rule 41(b), which contemplates a motion by a defendant, a federal court may *sua sponte* dismiss a case for failure to prosecute or comply with an order. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962); *Steward v. City of Jackson*, 8 F. App'x 294, 296 (6th Cir. 2001). As the *Link* court explained, "Neither the permissive language of [Rule 41(b)] – which merely authorizes a motion by the defendant – nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link*, 370 U.S. at 630. "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30.

The Sixth Circuit considers four factors in reviewing the decision of a district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

6

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999)).  All four of the factors favor dismissal here.

The Court expressly warned McGough that his case could be dismissed if he failed to respond to Defendants' motion to dismiss.  (ECF Nos. 37, 41, 42).  Nevertheless, McGough has failed to respond for months, meaning that the first[5] and third factors weigh in favor of dismissal.  As to the second factor, Defendants are prejudiced by having this action pending against them without it being advanced to a timely conclusion due to McGough's apparent abandonment of his claims against them.  The Court is sympathetic to Defendants' plight, as they have been forced to expend time and resources researching and drafting their motions to dismiss and/or other pleadings, despite the fact that McGough apparently has lost interest in his case.  And, finally, given McGough's multiple failures to comply with this Court's rules and orders, the Court sees no utility in considering or imposing a lesser sanction; indeed, McGough appears to have completely abandoned this case.  Thus, all of the factors weigh in favor of dismissal for failure to prosecute.[6]

---

[5] With respect to the first factor, just as in *White v. Bouchard*, No. 05-73718, 2008 WL 2216281, at *5 (E.D. Mich. May 27, 2008), "it is not clear whether plaintiff's failure to prosecute is due to willfulness, bad faith or fault …." *Id*.  Regardless, the defendants "cannot be expected to defend an action which plaintiff has apparently abandoned, not to mention the investment of time and resources expended to defend this case." *Id*.

[6] Although the foregoing is a sufficient basis for dismissing McGough's case under Fed. R. Civ. P. 41(b), the Court notes that McGough's claims appear frivolous and/or fail to state claims for relief, such that dismissal of this action is also proper under 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c).  For example, as noted by the Washtenaw County defendants, the defendant judges have judicial immunity as to McGough's claims against them, since those claims arise out of decisions they made in their judicial capacity.  (ECF No. 40, PageID.332) (citing *Johnson v. Turner*, 125 F.3d 324, 33 (6th Cir. 1997)).  Similarly, the prosecutors' actions – all strictly related to the performance of their prosecutorial duties – are shielded by the doctrine of prosecutorial immunity.  (ECF No. 40, PageID.334) (citing *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986)).  As to the court administrators sued by McGough, he makes only vague, sweeping, conclusory

allegations of wrongdoing, such as that Fusik's and Matthews' "omissions in court administration contributed to the unlawful delays, barriers to access, and continued violations of Plaintiff's rights to liberty and due process," and that Mastin "knowingly obstructed Plaintiff's ability to file critical pleadings, delayed or refused the processing of time-sensitive motions, and thereby contributed materially to the denial of Plaintiff's due process rights." (ECF No. 12, PageID.79-80). These vague allegations fail to state a claim for relief as they do not identify one single delay that occurred, or one single pleading that McGough was unable to file, that prejudiced him in any way. McGough's Section 1983 claims against the private party defendants (the McCloskeys and their attorneys) are frivolous, as that statute only applies to "state actors" and McGough's complaint contains no factual allegations from which the Court could find their conduct to be attributable to the state. To the extent McGough would argue he satisfies the "state actor" requirement by having pled in Count 10 that all Defendants were part of a "civil conspiracy" against him, as discussed below, that claim fails.

Turning to McGough's specific causes of action, Counts 1-7 and Count 9 all stem from the underlying criminal felony case against McGough. He alleges that he was arrested "without a warrant, probable cause, exigent circumstances, or reasonable suspicion," that the "Officers unlawfully detained" him, and that the Defendants "knowingly advanced and maintained false criminal and civil charges," withheld "exculpatory video evidence," "violated procedural due process," "systematically ignored" his filings and "retaliated through contempt charges." (ECF No. 12, PageID.95-96). These claims (including against the Ypsilanti Defendants) fail as a matter of law under *Heck v. Humphrey*, 512 U.S. 477 (1994), which holds that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," and here McGough's complaint contains no such allegations. *Heck*, 512 U.S. at 486-87 (footnote omitted). Indeed, in asking this Court for a "dismissal with prejudice of any criminal charges" pending against him (ECF No. 12, PageID.97), McGough is quite literally calling into question the validity of the criminal charges he challenges, which is exactly what the *Heck* doctrine forbids. *See Richmond v. Mosley*, No. 23-1643, 2024 WL 2862505, at *1-2 (6th Cir. June 6, 2024) (§ 1983 plaintiff cannot maintain claim for malicious prosecution where that claim "necessarily" implies the invalidity of his conviction). And, to the extent McGough's claim of "excessive force" in Count 3 is not barred by *Heck*, his complaint fails to specify any level of force that was used against him, let alone facts from which one could conclude that unlawful gratuitous force was used. (*Id.*, PageID.83, 95). In Count 8, McGough alleges "Procedural and Substantive Due Process Violations – Family Court" under the Fourteenth Amendment. (ECF No. 12, PageID.96). To succeed on a procedural due process § 1983 claim, a plaintiff must plead and prove "the inadequacy of state or administrative processes and remedies to redress [the alleged] due process violations." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004). McGough fails to do this, and instead simply challenges state court decisions with which he disagrees. To bring a substantive due process claim, the plaintiff must allege (1) a constitutionally protected property, or liberty, interest that (2) was deprived by arbitrary and capricious state action. *See MSI Regency, Ltd v. Jackson*, 433 F. App'x 420, 429 (6th Cir. 2011). Here, the Court assumes McGough is asserting a due process liberty

interest known as "family integrity." To succeed on a "family integrity" claim, the Sixth Circuit has stated that the plaintiff must plead that the "state official act with a culpable state of mind directed at the family relationship." *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023). Further, "actions that collaterally impact the family relationship are insufficient to give rise to a substantive due process claim that the state has violated an individual's right to family integrity." *Id.* Nowhere does McGough allege that a state official acted with a "culpable state of mind *directed at the family relationship.*" *Id*. (emphasis added). Rather, he alleges only "collateral effects" from McGough's own actions and the judicial decisions that followed. Those are "not constitutional violations." *Id.* Not helping his cause, McGough even admits that his loss of parental rights was a "collateral impact" of his criminal charges and arrest. (ECF No.12, PageID.89). McGough's claims in Counts 10 and 12 of a "conspiracy" to violate his civil rights fail because such claims "must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim....'" *Ayers v. Gabis*, No. 20-11735, 2021 WL 4785751, at *7 (E.D. Mich. Apr. 2, 2021), report and recommendation adopted, 2021 WL 4316853 (E.D. Mich. Sept. 23, 2021) (citations omitted). Here, however, McGough merely alleges, in wholly conclusory fashion, that the Defendants "conspired" through "coordinated action" and "shared objectives," without providing any details whatsoever that would allow the Court to conclude an actual agreement existed between the alleged wrongdoers. (ECF No.12, PageID.96). *See Easterling v. Rudduck*, No. 1:14-cv-876, 2015 WL 1567844, at *6 (S.D. Ohio Apr. 6, 2015), report and recommendation adopted, 2015 WL 2452437 (S.D. Ohio May 21, 2015); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one). In Count 11 McGough asserts a claim for "suppression of Parent-Child Association" under the First and Fourteenth Amendment, claiming that Defendants "intentionally and unjustifiably interfered with [his] protected liberty interest in maintaining a familial relationship with his child." (ECF No.12, PageID.96). The Court is unable to identify any First Amendment claim here, as the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances," U.S. CONST. amend. I, and no allegations in McGough's complaint speaks to a violation of those rights. And, while McGough's reference to a "familial relationship" permits the Court to identify a substantive due process claim as to his liberty interest in what is more commonly known as "family integrity," *Chambers*, 63 F.4th at 1100, the Court already explained above why McGough's complaint fails to allege sufficient facts to state such a claim. Finally, McGough's municipal liability claim (which the Court will assume he intended to assert against Washtenaw County and its agencies even though the complaint refers to "Wayne County and its agencies" (ECF No. 12, PageID.97)) in Count 13 fails to state a claim. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory, and can only have such liability if the plaintiff can show that a custom or practice of the municipality was the moving force behind his alleged injury. *Wright v. City of Euclid*, 962 F.3d 852, 879-80 (6th Cir. 2020). A plaintiff can make this showing in four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). To

## II.     RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that McGough's complaint **(ECF No. 12)** be **DISMISSED** and that Defendants' motions to dismiss **(ECF Nos. 29, 33, 35, 40)** be **DENIED AS MOOT**.

Dated: December 15, 2025        s/ David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v.*

---

state a claim for relief on any such theory of liability, the plaintiff must allege facts sufficient to identify the specific policy, custom, or acquiescence that caused the constitutional violation, and mere conclusory assertions are not enough.  *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim.").  As to a failure to train claim, the complaint must either specify details of training that was needed but not provided, or that a "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Martinez v. Wayne Cnty, Mich.*, 142 F.4th 828, 843 (6th Cir. 2025) (citation omitted).  Here, however, McGough's complaint contains no such allegations whatsoever, and instead asserts as the "basis" for his "municipal liability" claim that "[t]he unconstitutional conduct was permitted and perpetuated by county policies, customs, failures in training or oversight, and a systemic indifference to Plaintiff's rights," without identifying any specifics about any of those matters.  (ECF No. 12, PageID.92, 97).  Clearly, then, McGough's complaint lacks "sufficient factual allegations" to state a plausible *Monell* claim.  *See Martinez*, 142 F.4th at 844.

*Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 15, 2025.

                                                      s/Eddrey O. Butts
                                                      EDDREY O. BUTTS
                                                      Case Manager